UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH djohnston5666@gmail.com<br><br>THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE, INC. | Misc. No. ____________________<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Alix Skelton, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI). I have been so employed since 2011 and am currently assigned to the Washington Field Office Child Exploitation and Human Trafficking Task Force. While employed by the FBI, I have investigated federal criminal violations relating to crimes against children, including sexual exploitation offenses, child pornography offenses and commercial sex trafficking, as well as other criminal investigations. I have gained experience through training by the FBI and everyday work relating to conducting these types of investigations.

2. As a Federal Agent, I am an investigative or law enforcement officer of the United States within the meaning of Title 18 United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1). As an FBI Special Agent, I am authorized to seek and execute federal arrest and search warrants for Title 18 criminal offenses, including offenses related to the sexual exploitation of minors, specifically

those involving the sexual exploitation of children in violation of Title 18, United States Code, Section 2423(b).

3. I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises owned, maintained, controlled, or operated by Google, Inc., an e-mail provider headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

4. In regard to this provider, this affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google, Inc., to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the listed accounts, including the contents of communications. As to the above-described accounts and media, the evidence and information to be searched is described in the following paragraphs and in Attachment A, and includes items evidencing violations of Title 18, United States Code, Section 2423(b), Travel with the Intent to Engage in Illicit Sexual Conduct, or the attempt to commit the offense.

5. Throughout this investigation, law enforcement officers and Agents have worked together to collect and record information about the illegal activities of those under investigation. The facts and information contained in the affidavit are based upon my personal knowledge, and information obtained from state and federal law enforcement officers, as well as from your affiant's own review of the communications with the undercover officer and the defendant, David Alan Johnston.

6. This affidavit contains information necessary to support probable cause for this application. It is not intended to include each and every fact and matter observed by me, other law enforcement officers, or known to the government. Not every fact known to this

investigation or by the government is set forth in this affidavit. Additionally, unless otherwise noted, wherever in this affidavit I assert that a statement was made by an individual, that statement is described in substance, and in part, and is not intended to be a verbatim recitation of the entire statement.

**JURISDICTION**

7. This Court has jurisdiction to issue the request warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigation." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, D.C. *See* 18 U.S.C. § 3237. Finally, the offenses under investigation are the subject of a grand jury investigation in the District of Columbia.

**IDENTIFICATION OF THE TARGET DEVICE TO BE EXAMINED**

8. This affidavit is respectfully submitted in support of a search warrant for specified email content within the email account djohnston5666@gmail.com, that is stored at premises controlled by Google, Inc., and is assigned in David Alan Johnston.

**RELEVANT STATUTES**

9. This investigation concerns alleged violations of Title 18, United States Code, Section 2423(b), relating to interstate travel with intent to engage in illicit sexual activity.

a. Title 18, United States Code, Section 2423(b) prohibits a person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with

another person shall be fined under this title or imprisoned not more than 30 years, or both.

**BACKGROUND REGARDING COMPUTERS, THE INTERNET,AND E-MAIL**

10. The term “computer” as used herein is defined in 18 U.S.C. § 1030(e)(1), and includes an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

11. I have had both training and experience in the investigation of computer related crimes. Based on my training, experience and knowledge, I know the following:

a. The Internet is a worldwide network of computer systems operated by governmental entities, corporations and universities. In order to access the Internet, an individual computer user must subscribe to an Internet Service Provider (ISP), which operates a host computer system with direct access to the Internet. The world wide web (www) is a functionality of the Internet which allows users of the Internet to share information;

b. With a computer connected to the Internet, an individual computer user can make electronic contact with millions of computers around the world. This connection can be made by any means, including modem, local area network, wireless and numerous other methods;

c. E-mail is a popular form of transmitting messages and/or files in an electronic environment between computer users. When an individual computer user sends e-mail, it is initiated at the user’s computer, transmitted to the subscriber’s mail server, and then transmitted to its final destination. A server is a computer that is

attached to a dedicated network and serves many users. An e-mail server may allow users to post and read messages and to communicate via electronic means.

**STORED WIRE AND ELECTRONIC COMMUNICATION ACCESS**

12. Title 18, United States Code, Chapter 121, Sections 2701 through 2711, is entitled "Stored Wire and Electronic Communications Records Access."

a. Title 18, United States Code, Section 2703(a), provides, in part: "A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or an electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure…by a court of competent jurisdiction. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications systems for more than one hundred eighty days by the means available under subsection (b) of this section."

b. Title 18, United States Code, Section 2703(b), provides, in part: "(1) A governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection (A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure…by a court of competent jurisdiction… (2) Paragraph (1) is applicable with respect to any wire or electronic communication that is held or maintained

on that service - (A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means by electronic transmission from), a subscriber or customer of such remote computing service; and (B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage of computer processing."

c. The government may also obtain records and other information pertinent to a subscriber to or customer of electronic communication service or remote computing service by way of a search warrant issued by a court of competent jurisdiction over the offense under investigation. 18 U.S.C. §2703(c)(1)(A). No notice to the subscriber or customer is required. 18 U.S.C. §2703(c) (3).

d. Title 18, U.S.C. § 2711, provides, in part: " As used in this chapter-

> (1) the terms defined in Section 2510 of this title have, respectively, the definitions given such terms in that section;
>
> (2) the term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic communications system;…"

e. Title 18, U.S.C. § 2510, provides in part:

> (8) "contents" when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communications;…

> (14) "electronic communications system" means any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications;…
>
> (15) "Electronic communications service" means any service which provides to users thereof the ability to send or receive wire or electronic communications;…
>
> (17) electronic storage" means-
>
> > (A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and
> >
> > (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

**<u>CRAIGSLIST, INC</u>**

13. In my training and experience, I have learned that Craigslist, Inc. (hereinafter, "Craigslist") is a company that operates a web forum that essentially serves as an online community bulletin board. Craigslist operates a web-based Internet forum for individuals to post listings for jobs, housing, companionship, dating, and the sale of goods. Craigslist advertisements are available for viewing by an Internet user and to the general public. To post an advertisement to Craigslist, an Internet user creates an account with Craigslist by providing an electronic mail address. Craigslist keeps stored electronic communications from the user

accounts regarding Craigslist advertisements and these communications may be located on the computers of Craigslist. Further, I am aware that computers at Craigslist contain information and other stored electronic communications belonging to third parties.

14. Based on my knowledge, training and experience, and the experience of other law enforcement personnel with whom I have spoken, I know that datacenters are facilities used to host computer systems and telecommunications along with internet servers. The datacenters for Craigslist are located in California and Arizona.

15. Craigslist provides email forwarding services which are available free of charge to Internet users of Craigslist. Subscribers obtain an account by registering on the Internet with Craigslist. Craigslist requests subscribers to provide basic information such as name, gender, zip code, and other personal/biographical information. However, Craigslist does not verify the information provided.

16. Craigslist maintains electronic records pertaining to the individuals and companies for which they maintain subscriber accounts. These records include account access information, email transaction information, and account application information.

17. Subscribers to Craigslist may access their accounts on servers maintained and/or owned by Craigslist from any computer connected to the Internet located anywhere in the world.

18. Any email that is sent to a Craigslist subscriber is stored in the subscriber's "mailbox" on the provider's servers until the subscriber deletes the email or the subscriber's mailbox exceeds storage limits preset by Craigslist.

19. When the subscriber sends an email, it is initialed at the user's computer, transferred via the Internet to Craigslist's servers and then transmitted to its end destination. Users have the option of saving a copy of the email sent. Unless the sender of the email

specifically deletes the email from the Craigslist server, the email can remain on the system indefinitely. The sender can delete the stored email message thereby eliminating from the email box maintained at the provider, but that message will remain in the recipient's email box unless the recipient deletes it as well or unless the recipient's account is subject to the account's limitations.

20. A Craigslist subscriber can store emails and image files on servers maintained and/or owned by the provider, so emails and image files stored by a Craigslist subscriber may not necessarily be located in the subscriber's home computer. The subscriber may store emails and/or other files on the provider's server when there is insufficient storage space in the subscriber's computer and/or when he/she does not wish to maintain them in the computer in his/her residence. A search of the files on the computer in the subscriber's residence, or in a portable computer, will not necessarily uncover the files that the subscriber has stored on the Craigslist server.

## GOOGLE, INC.

21. The email account for which this search warrant is sought is hosted by Google, Inc. (hereinafter, the "email provider"). In my training and experience, I have learned that the email provider provides a variety of on-line services, including email access, to the general public. The email provider allows subscribers to obtain email accounts at the domain name gmail.com, like the email account listed in Attachment A. Subscribers obtain an account by registering with the email provider. During the registration process, the email provider asks subscribers to provide basic personal information. Therefore, the computers of the email provider are likely to contain stored electronic communications (including retrieved and unretrieved email for the email provider's subscribers) and information concerning subscribers

and their use of the email provider’s services, such as account access information, the email transaction information, and account application information.

22. In general, an email that is sent to the email provider’s subscriber is stored in the subscriber’s “mail box” on the email provider’s servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on the email provider’s servers indefinitely.

23. When the subscriber sends an email, it is initiated at the user’s computer, transferred via the Internet to the email provider’s servers, and then transmitted to its end destination. The email provider often saves a copy of the email sent. Unless the sender of the email specifically deletes the email from the email provider’s server, the email can remain on the system indefinitely.

24. A sent or received email typically includes the content of the message, source and destination addresses, the date and time at which the email was sent, and the size and length of the email. If an email user writes a draft message but does not send it, that message may also be saved by the email provider but may not include all of these categories of data.

25. A subscriber of the email provider can also store files, including emails, address books, contact or buddy lists, calendar data, pictures, and other files, on servers maintained and/or owned by the email provider.

26. In my experience, subscribers do not routinely copy emails stored in their Google account in order to store the emails on a home computer or other location, although it is possible to do so. This is particularly true when they access their Google account through the web, or if they do not wish to maintain particular emails or files in their residence.

27. In general, email providers like Google ask each of their subscribers to provide certain personal identifying information when registering for an email account. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often nevertheless provides clues to their identity, location, or illicit activities.

28. Email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the email provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

29. In some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support

services, as well records of any actions taken by the provider or user as a result of the communications.

30. A Google subscriber can also store with the provider files in addition to e-mails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to e-mails), and other files, on servers maintained and/or owned by Google. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, emails in the account, and attachments to emails, including pictures and files.

31. As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each offense-element, or, alternatively, to exclude the innocent from further suspicion. From my training and experience, I know that the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, email providers typically log the IP addresses from which users access the email account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the criminal activity under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further

indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email). Finally, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## PROBABLE CAUSE

32. Leading up to January 22, 2017, Detective Timothy Palchak, (hereinafter, the "UC"), was acting in an undercover capacity as part of the Metropolitan Police Department-Federal Bureau of Investigation ("MPD-FBI") Child Exploitation Task Force. The UC had posted numerous online bulletin messages on specific social media forums, which, based on the UC's experience and information gathered from other sources, are websites that are frequented by individuals who have a sexual interest in children and incest. The bulletin messages were intended to attract individuals with a sexual interest in children. The UC would respond to certain messages or post messages on these public forums and provided his UC email account information and KiK screen name. KiK refers to KiK messenger, a free mobile application that permits users to send text messages and other content, including videos and images.

33. On January 22, 2017, the UC received an email message in response to an advertisement the UC had placed in the "casual encounters" section of www.Craigslist.org from an individual using the username "Dave Johnston," later identified as the defendant, David Alan Johnston. The electronic mail communications between JOHNSTON, who was using an anonymized email (aea7d0d2156a3d2882652aeec7c34f9d@reply.craigslist.org) via a proxy service provided by www.craigslist.org and the UC who was using an email address through

Google, occurred between January 22 and January 26, 2017, before the communications transferred to Kik Messenger. The following is the email correspondence:

**JOHNSTON:** There's several guys on cl that enjoy this taboo sex. I'm on Kik at dj011356

**JOHNSTON:** Couple of nice little girls at hooters right now. Maybe 9 and 12 but very cute. I like the way little girls wear those stretchy leggings that show off a little camel toe.

**UC:** mmmmmmm nice

**JOHNSTON:** Do you like that? [this message included an attached image of a naked young female]

**UC:** yes!!! my daughter is 9

**JOHNSTON:** Great age. Are you close to her?

**UC:** very :)

**JOHNSTON:** Sweet. My daughter and I were very close at that age too. Turned into a very nice relationship. She's in her 30 s now and still sits on my lap and rub her ass to get me hard.

**JOHNSTON:** Where did you go

**JOHNSTON:** Good morning

**JOHNSTON:** Send me your Kik address and we can take this more private

**JOHNSTON:** What is your Kik handle

**JOHNSTON:** Kik address?

**UC:** hey what are u into ? limits? Want to make sure we are on the same page

**JOHNSTON:** I love young ladies

**JOHNSTON:** No limits on what I would liket o do with them. Love the bald pussy, tight ass, little tits

**UC:** younger the better for me, Limits on age?

**JOHNSTON:** No limits on age. My first was 8

**UC:** mmmm, may daughter is 9 whats your kik?

**JOHNSTON:** Dj011356

34. At that time the conversation between Johnston and the UC moved to Kik Messenger. During the course of the KiK Messenger conversation, Johnston repeatedly requested that the UC send him explicit pictures of his purported 9 year old daughter. Johnston also described witnessing in person “a local friend” and the friend’s girlfriend sexually abusing the friend’s 12 year old daughter.

35. As the conversation progressed via KiK Messenger on January 26 and 27, the defendant expressed interest and intent in traveling into the District of Columbia to engage in specific sexual acts with the UC’s purported 9 year old daughter. The defendant and the UC agreed to meet at a specific time and location in Washington, D.C. on January 31, 2017. At the appointed date and time the defendant arrived at the agreed upon location, engaged in a brief conversation with the UC and then accompanied the UC towards the UC’s purported apartment where the purported 9 year old daughter was waiting. At that time, the defendant was arrested for a violation of title 18 United States Code, Section 2423(b), Travel with intent to engage in illicit sexual conduct.

36. On February 1, 2017, a criminal complaint was filed charging JOHNSTON with one count of Travel with Intent to Engage in Illicit Sexual Conduct, in violation of Title 18 USC § 2423(b).

37. On February 16, 2017, in response to a subpoena, Craigslist, Inc. provided your affiant with documents related to the user assigned associated with the anonymized email address referenced above. Specifically, the user utilizing the anonymized email address aea7d0d2156a3d2882652aeec7c34f9d@reply.craigslist.org, was utilizing a true email address of djohnston5666@gmail.com. Therefore, all emails, to or from anonymized email address aea7d0d2156a3d2882652aeec7c34f9d@reply.craigslist.org, including those with the FBI UCE

and referenced above, originated from or were forwarded to the email address djohnston5666@gmail.com.

38. On March 23, 2017, also in response to a subpoena, Craigslist, Inc. provided advertisements to which the user at djohnston5666@gmail.com replied via the Craigslist.org proxy server from February 16, 2016 to January 30, 2017. In total, over 2,500 emails referencing 357 unique advertisements were sent to or from djohnston5666@gmail.com via the Craigslist proxy server during that time. All but one advertisement was sexual in nature, the majority of which concerned sexual encounters with adult men. Records provided by Craigslist also revealed that on November 5, 2016, the user at djohnston5666@gmail.com posted an advertisement containing the following text: "Has anyone seen a cute little girl in a restaurant or mall that excites you? Do you think about it? Does it turn you on? Do you have a story or fantasy to share".

39. In response to a subpoena, KiK, Inc. provided your affiant with records related to user "dj011356." Those records included the user provided email address djohnston5666@gmail.com.

40. Through her training and experience, your Affiant is aware that individuals seeking or offering sexual contact with minors often disguise their intentions on publically visible forums in an effort to evade law enforcement, but discuss such illegal sexual contact with minors via in a private setting such as email.

41. Because the email djohnston5666@gmail.com is known to be connected to JOHNSTON's www.craigslist.org account, and because it is known that JOHNSTON's email communications in response to Craigslist postings therefore were routed to djohnston5666@gmail.com, there is probable cause to believe that the records maintained in the

regular course of business by Google, Inc. contain evidence that JOHNSTON did travel in interstate commerce with intent to engage in illegal sexual conduct as well as evidence tending to show that JOHNSTON is the owner/user of that account.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED FROM SERVICE PROVIDERS**

42. I anticipate executing the warrants for Google under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require these providers to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

**CONCLUSION**

43. Based on the forgoing facts, there is probably cause to believe that on the computer systems in control of Google, Inc., there exists evidence of violations of title 18 United States Code, Section 2423(b) (travel with intent to engage in illicit sexual conduct). Further, there is probably cause to believe that the Gmail account described in Attachment A contains the fruits, instrumentalities, and evidence of crimes described in Attachment B. Accordingly, a search warrant is requested for the contents of the email account described in Attachment A. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

________________________________

ALIX SKELTON
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
this ____ day of February, 2017

__________________________________________

HONORABLE DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE